Isaac D. Zorea
Law Office of Isaac Derek Zorea
P.O. Box 210434
Anchorage, AK 99521
(907) 644-2802
(800) 536-1071 facsimile

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| RANA MOORE,<br><br>        Plaintiff,<br>vs.<br><br>KIRSTJEN M. NIELSEN, Secretary, Department of Homeland Security,<br><br>        Defendant. | Case No. 3:18-cv- |

**COMPLAINT FOR DAMAGES**

COMES NOW, Plaintiff, RANA MOORE, and alleges as follows:

**I. JURISDICTION AND VENUE**

1. Jurisdiction is proper because the United States Department of Homeland Security is a federal agency of Defendant, United States of America.

2. Venue is proper in the United States District Court for Alaska because the events giving rise to this action occurred with the State of Alaska. See 28 U.S.C.A. § 1402(b).

COMPLAINT FOR DAMAGES:
MOORE V. KIRSTEN M. NIELSEN                           PAGE - 1 -

## II. EXHAUSTION OF REMEDIES

3. Plaintiff has satisfied the conditions precedent to filing a civil lawsuit against KIRSTJEN M. NIELSEN, Secretary, Department of Homeland Security. This action arose on January 12, 2017, when Manager's within the DHS terminated Rana Moore's employment in retaliation for her seeking disability accommodations, and in disparate treatment based on her race and disability.

4. On July 13, 2016, more than 180 days had passed for the Equal Employment Opportunity Commission to adjudicate RANA MOORE'S complaint against the United States of America, agency. RANA MOORE timely requested a hearing on her claim, prior to the hearing, but after 180 days had passed since filing her complaint, she withdrew her request for a hearing to pursue her claim in Federal District Court.

## III. PARTIES

5. Plaintiff Rana Moore is, and at all times mentioned herein was, a resident of the State of Alaska, citizen of the United States of America.

6. Plaintiff is informed and believes, and based thereon alleges that Defendant Kirstjen M. Nielsen, Secretary, Department of Homeland Security is responsible for the acts and omissions of employees of the United States Department of Homeland Security acting within the course and scope of employment.

## IV. FACTUAL ALLEGATIONS

7. On May 3, 2015, Rana Moore was hired to a D-Band Transportation Security Officer (TSO) position at the Anchorage International Airport for Defendant, Department of Homeland Security (DHS).

8. In March 2016, TSO Moore received an award for going above and beyond her duties.

9. On or about September 27, 2016, TSO Rana Moore received a review stating that she "Achieved Expectations," according to her annual review assessment. The prior year, for fiscal year 2015, Moore also received an assessment review of "Achieved Expectations." However, evidence shows that she should have received a higher score on her evaluation because of the earlier award that she had received.

10. On November 2, 2016, while rushing to the morning meeting for TSA security officers, Ms. Moore entered the meeting room and immediately became very sick – feeling unable to breathe. She later realized that the meeting room is located in an area where jet fuel fumes are excessive and linger in the meeting room.

11. The medical distress that TSO Moore experienced on November 2, 2016 was extreme enough to require that she quickly leave the meeting room for air. She quickly walked across the floor outside the meeting room to the bathroom to splash water on her face. After continuing to feel very sick, Ms. Moore contacted her husband, who took her to the emergency room for observations.

12. Several TSA managers noticed Ms. Moore's medical incident on November 2, 2016, but they did not proactively respond.

13. After the November 2, 2016 incident, Ms. Moore met with TSM Spindler on November 9, 2016 to discuss the fact that no TSA supervisor responded properly to her medical emergency. TSM Spindler verbally criticized Ms. Moore for her statements about being neglected, but he did start a semi-investigation.

14. TSM Spindler's investigation sought statements from only two TSA employees concerning Ms. Moore's incident. Ms. Moore, however, took protected actions and brought her concerns to OSHA, filing a formal complaint on December 14, 2016.

15. On December 18, 2016, responding to her complaint to OSHA, and her medical disability concerns, TSM Spindler met with Ms. Moore and shifted blame onto her, saying that she acted too passively when under duress. He also required Ms. Moore to obtain medical documentation of her condition.

16. On December 19, 2016, TSO Moore spoke to Mr. Becker to obtain a copy of the video tape from November 2, 2016.

17. On December 20, 2016, in response to her protected actions, seeking disability accommodation and contacting OSHA, TSA management demanded that Ms. Moore quit her job or she would be fired. When Ms. Moore refused to quit her job, TSA management proceeded to look for reasons to fire her.

18. On December 20, 2016, when TSA management demanded Ms. Moore quit, she was given no cause for her threatened termination. When she refused to quit, TSA management, including TSM Spindler, met with Ms. Moore on January 12, 2017 to announce her termination.

19. At the January 12, 2017, TSA management relied on incidents that happened after December 20, 2016 as justification to terminate her. It is clear that Ms. Moore's OSHA complaint, and request for a medical accommodation, played a significant role in the decision to terminate her.

## V. CLAIM FOR RELIEF

**A. DISCRIMINATION/FAILURE TO ACCOMMODATE RANA MOORE: 29 U.S.C. § 791.**

20. Plaintiff herewith refers to, and by that reference incorporates as though fully set forth herein, each and every paragraph set forth above ¶ 5-29.

21. Plaintiff has a disability that makes it difficult for her to breathe when she is near airplane fuel fumes. This medical condition was identified as a disability, and Ms. Moore was considered to have this disability by her TSA managers when she entered a room with fuel fumes and became very sick.

22. Plaintiff is informed and believes that TSA Management, specifically TSM Spindler, treated her differently based on her disability, and requests for accommodations, when on he refused her request for an accommodation and instead asked her to resign her position with DHS.

23. It is believed that TSM Spindler would have behaved differently toward Ms. Moore if she did not have a disability, and/or if she had not requested and received disability accommodations.

24. Plaintiff is informed and believes that she engaged in protected activity when she requested accommodations for her disability, and when she sought help from OSHA to verify her allegations that an unsafe condition at work existed that exacerbated her disability.

25. Plaintiff is informed and believes that when she engaged in protected activity, TSM Spindler used his position of authority, to engage in unlawfully discriminatory conduct toward her, eventually terminating her employment for which conduct Ms. Moore seeks all remedies available to under 29 U.S.C. § 794, including by reference all remedies available under 42 U.S.C. § 2000e-16(b); 42 U.S.C. § 2000e-5(g) and 42 U.S.C. § 2000e-5(k).

**PRAYER FOR RELIEF**

WHEREFORE, as a proximate, legal, and substantial cause of Defendant's acts and omission above, Plaintiff prays for the following remedies:

1. For special damages according to proof;

COMPLAINT FOR DAMAGES:
MOORE V. KIRSTEN M. NIELSEN                                        PAGE - 5 -

2. For general damages in an amount according to proof;

3. For exemplary damages;

4. For reasonable attorney's fees as provided by statute (42 U.S.C. § 1988);

5. For pre-judgment interest as allowed by law;

6. For cost of suit herein;

7. For any other such relief as the Court deems just and proper, or as permitted by statute.

Dated this 23rd day of November 2018.

S/ Isaac Zorea
Law Offices of Isaac D Zorea
P.O. Box 210434
Anchorage, AK 99521
Telephone: (907) 830-1385
Facsimile: (800) 536-1071
E-mail: Eyedz@gci.net
